UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD MARKS, et al.,<br><br>Defendants. | Case No. C19-1336-RSL<br><br>ORDER |

This matter comes before the Court on (1) "United of Omaha Life Insurance Company's Motion to Dismiss Wilmington Trust, N.A.'s Counterclaim" (Dkt. #30), (2) "United of Omaha Life Insurance Company's Motion for Leave to Deposit Funds, to Dismiss United of Omaha with Prejudice, and to Discharge Liability," (Dkt. #20), and (3) "Wilmington Trust N.A.'s Motion to Extend Pre-trial Schedule and Related Dates" (Dkt. #44).

**I.    BACKGROUND**

   **a.  Factual Background**

United of Omaha Life Insurance Company ("United") issued a $1,000,000 life insurance policy ("the Policy") to Daniel Marks ("the decedent"). See Dkt. #21-1 (Ex. 1). The decedent passed away on or around June 8, 2019 in King County, Washington. Dkt. #1 at 2. Prior to March 4, 2019, the decedent owned the Policy, and Richard Marks ("Marks") and Charles John Allan Williams ("Williams") were named as the irrevocable beneficiaries. See Dkts. #21-2 (Ex. 2), #21-3 (Ex. 3). On March 4, 2019, the decedent sold the Policy to Coventry First, LLC ("Coventry"), which allegedly resulted in ownership of the Policy vesting in Wilmington Trust,

ORDER - 1

1 N.A. ("Wilmington") as a securities intermediary. See Dkts. #24 at 3, #25-1 (Ex. A). On March 2 15, 2019, Coventry notified United by facsimile of its purchase of the Policy. See Dkt. #31-1 3 (Ex. 1). Subsequently, Wilmington sent United (1) a "Beneficiary's Release and Consent to 4 Change Beneficiary" form purportedly signed by Marks on March 4, 2019 and notarized by 5 Notary Public Lanae Myles, see Dkt. #31-2 (Ex. 2), (2) a "Beneficiary's Release and Consent to 6 Change Beneficiary" form purportedly signed by Williams on March 24, 2019 and notarized by 7 Notary Public Lanae Myles, see Dkt. #31-3 (Ex. 3), (3) a "Change of Ownership Form" dated 8 April 1, 2019, identifying Wilmington as the new Policy owner and purportedly signed by the 9 decedent, Marks, Williams, and Melissa A. Marion on behalf of Wilmington, see Dkt. #31-4 10 (Ex. 4), and (4) an "Application for Change of Beneficiary" form dated April 2, 2019, 11 purportedly signed by Williams, Marks, and Melissa A. Marion on behalf of Wilmington, see 12 Dkt. #31-5 (Ex. 5). Thereafter, United issued an endorsement identifying Wilmington as the 13 Policy's sole irrevocable beneficiary effective April 1, 2019. See Dkts. #21-3 (Ex. 3), #34-1 14 (Ex. A). After the decedent passed away, Marks, Williams, and Wilmington claimed competing 15 interests in the Policy proceeds. The parties now imply that the notarized signatures of Marks 16 and Williams authorizing the Policy's beneficiary change may have been forged. See, e.g., 17 Dkts. #30 at 1-2, #48 at 2.

18 Wilmington now alleges that Williams sent United a notarized "security letter" in 19 September 2016, identifying himself as an irrevocable beneficiary of the Policy and stating that, 20 "should any changes be made to the Policy, a password and notarized signature must be 21 presented by him." Dkt. #24 at 7-8. Wilmington further alleges that United sent a "reply letter" 22 to Williams acknowledging receipt of this "security letter." Id.

23      **b. Procedural History**

24 On August 23, 2019, United brought this cause of action in interpleader, naming Marks, 25 Williams, and Wilmington as defendants. See Dkt. #1. The action concerns defendants' 26 competing claims to the proceeds from the Policy. Id. On November 7, 2019, United moved for 27 leave to deposit the life insurance funds into the Court's registry, and for an order dismissing it 28 with prejudice and discharging it from further liability in the matter. See Dkt. #20. Wilmington

ORDER - 2

filed an opposition to United's motion, asserting that United faces liability to the claimants as a negligent stakeholder. See Dkt. #26. Wilmington amended its answer to the interpleader complaint to assert counterclaims against United, alleging negligence, "estoppel," and "unclean hands." See Dkt. #24.

### II. UNITED'S MOTION TO DISMISS WILMINGTON'S COUNTERCLAIMS (Dkt. #30)

United moves to dismiss Wilmington's counterclaims under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. See Dkt. #30.

#### a. Legal Standard

To survive a motion to dismiss, Wilmington's counterclaims must allege facts sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court presumes all well-pleaded allegations to be true and draws all reasonable inferences in favor of the non-moving party. See In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). The facts must allow the Court "to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. If a plaintiff's complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. See Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015).

#### b. First Cause of Action: Negligence

Wilmington's first cause of action against United is for negligence. To prevail on a negligence claim under Washington law, Wilmington must prove (1) duty, (2) breach, (3) injury, and (4) proximate causation. See, e.g., Lowman v. Wilbur, 178 Wn.2d 165, 169 (2013).

Wilmington asserts that United owed it a duty arising from Williams' alleged "security letter." Namely, Wilmington alleges that United (1) failed to obtain the "password" from Williams prior to removing Williams as an irrevocable beneficiary, and (2) failed to disclose the

ORDER - 3

alleged security letter's existence to Wilmington when processing the beneficiary change. See Dkt. #24 at 7-9.  The Court rejects the notion that Williams' alleged "security letter" gave rise to any duty on United's part.  It is undisputed that United received notarized change of beneficiary forms from Williams and Marks.  See Dkts. #24 at 4-5, #30 at 3-4, #33 at 2.  Wilmington fails to support its argument that United was obligated to honor and to disclose Williams' unilateral request for additional "security" prior to recognizing a beneficiary change using the Policy's established procedure.  See Dkt. #31-6 (Ex. 6) at 3 ("You may change the owner of this policy by making an absolute assignment . . . by Written Request.  If the Beneficiary designation in effect is irrevocable, the Beneficiary must also sign the written request.").[1]  Indeed, Washington law expressly rejects the notion that United was required to abide by Williams' unilateral request.  See RCW 48.18.190 ("No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made part of the policy.").  United had no duty to honor or disclose Williams' "security letter."  Accordingly, Wilmington's allegations regarding United's obligations as to the alleged "security letter" do not support a negligence claim.

Wilmington also baldly asserts that United "owed a duty to future purchasers of the Policy to ensure that the Policy title was not contested."  See Dkts. #24 at 8, #33 at 6-7.  It alleges that United's duty arose when it "placed the Policy, a security, into the stream of commerce entrapping Wilmington, the successor in interest."  Id.  Wilmington presents no

---

[1] While the Court's review in the context of a Rule 12(b)(6) motion to dismiss is generally limited to the contents of the complaint, see Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1995), certain documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted) ("The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan[.]").  On this basis, the Court takes judicial notice of the select pages from the Policy that are attached as Exhibit 6 to United's motion to dismiss.  See Dkt. #31-6 (Ex. 6).

ORDER - 4

authority supporting the existence of such a duty, and the Court can find none.[2]  The Court rejects the implication that United had a duty to conduct an additional, independent investigation into whether Marks' and Williams' notarized beneficiary forms were the product of free will. Cf. Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 793 (2013) ("The proper functioning of the legal system depends on the honesty of notaries who are entrusted to verify the signing of legally significant documents").

Wilmington fails to state a claim for negligence under Washington law.  Its first cause of action against United is accordingly DISMISSED with prejudice pursuant to Rule 12(b)(6).

### c. Second Cause of Action: Equitable Estoppel

In its second cause of action, Wilmington alleges that United is "estopped from maintaining that anyone other than Wilmington is the beneficiary of the Policy."  See Dkt. #24 at 9.  Wilmington alleges that United represented to it "that the prior irrevocable beneficiary designations had been removed from the Policy," while "fail[ing] to inform Wilmington that it failed to remove the prior irrevocable beneficiary designations in accordance with the Security Requirements."  Id.  Wilmington asserts that it "relied upon United's representations."  Id.  The Court construes Wilmington's second cause of action as one for equitable estoppel.  A claim for equitable estoppel "requires proof of (1) an admission, act or statement inconsistent with a later claim; (2) another party's reasonable reliance on the admission, act or statement; and (3) injury to the other party which would result if the first party is allowed to contradict or repudiate the earlier admission, act or statement."  Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 20 (2002) (citation omitted).  "[A] party asserting estoppel must prove each of its elements by

---

[2] Wilmington's reliance on Lee v. West Coast Life Insurance Co., 688 F.3d 1004, 1012-13 (9th Cir. 2012) is misplaced.  In Lee, the Ninth Circuit held that "the federal interpleader remedy does not shield a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds."  Id. at 1014.  However, the negligence counterclaim in Lee stemmed from the insurer's own failure to correctly execute a policy change form.  Id. at 1007.  A policy administrator at the insurer's office erroneously instructed the parties to sign and execute the change form in a manner inconsistent with the correct procedures for changing the policy's ownership and beneficiaries.  Id.  No such allegation is present here, and Lee does not support Wilmington's contention that United owed it a duty as a future purchaser of the Policy.

ORDER - 5

clear, cogent, and convincing evidence." <u>Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1</u>, 124 Wn.2d 816, 831 (1994) (citation omitted).

Wilmington's estoppel claim fails because it cannot point to any "admission, act or statement" by United that is "inconsistent" with a later claim. <u>See</u> <u>Dep't of Ecology</u>, 146 Wn.2d at 20. Using the paperwork Wilmington provided, United processed the beneficiary change in accordance with its Policy's procedures and subsequently endorsed Wilmington as the Policy's beneficiary. <u>See</u> Dkts. #24 at 9, #34-1 (Ex. A). Wilmington's bare assertion that United has identified or maintained that any claimant is the rightful beneficiary of the Policy, <u>see</u> Dkt. #33 at 3-4, is flatly undermined by United's initiation of this interpleader action for that purpose.

Furthermore, Wilmington fails to state an equitable estoppel claim based on United's alleged failure to disclose Williams' "security letter." "Estoppel can arise through silence, as well as statements, when one has a duty to speak out." <u>McDaniels v. Carlson</u>, 108 Wn.2d 299, 308 (1987) (citations omitted). As discussed above, Wilmington fails to present any convincing authority or make any plausible showing that United had a duty to speak or to disclose the alleged "security letter."

Wilmington cannot establish the elements of equitable estoppel under Washington law. Its second cause of action is DISMISSED with prejudice under Rule 12(b)(6) for failure to state a claim.

### d. Third Cause of Action: Unclean Hands

Wilmington's third cause of action alleges "unclean hands." <u>See</u> Dkt. #24 at 9. Unclean hands is an equitable defense in Washington. <u>See, e.g.</u>, <u>Miller v. Paul M. Wolff Co.</u>, 178 Wn. App. 957, 966 (2014). Wilmington offers no basis to assert "unclean hands" as an independent cause of action. <u>See generally</u> Dkt. #33. Wilmington's third cause of action is DISMISSED with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

### e. Conclusion

For the foregoing reasons, United's Motion to Dismiss Wilmington's Counterclaims (Dkt. #30) is GRANTED. Each of Wilmington's counterclaims against United is dismissed with prejudice, pursuant to Rule 12(b)(6), for failure to state a claim.

ORDER - 6

### III. UNITED'S MOTION FOR LEAVE TO DEPOSIT FUNDS (Dkt. #20)
#### a. Interpleader Motion

United brings this interpleader action under 28 U.S.C. § 1335. See Dkt. #1. Statutory interpleader under 28 U.S.C. § 1335 requires minimal diversity of citizenship between the adverse claimants and an amount in controversy exceeding $500. See State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967); 28 U.S.C. § 1335. Here, minimal diversity exists between the adverse claimants—Marks is a citizen of Washington, Williams is a citizen of Nevada, and Wilmington is a Delaware association with its principal place of business in Delaware. See Dkt. #1 at 1-2. Further, the amount in controversy is $1,000,000. Id. Accordingly, the requirements for statutory interpleader are satisfied and the Court has jurisdiction over United's Motion for Leave to Deposit Funds (Dkt. #20). See 28 U.S.C. § 1335; Tashire, 386 U.S. at 530.

"Interpleader is proper when a stakeholder has at least a good faith belief that there are conflicting colorable claims." Michelman v. Lincoln Nat'l Life Ins. Co., 685 F.3d 887, 889 (9th Cir. 2012). There are two steps in an interpleader action: (1) the Court must determine whether "there is a single fund at issue and whether there are adverse claimants to that fund," and (2) the Court must adjudicate the adverse claims to determine the respective rights of the claimants. See Mack v. Kuckenmeister, 619 F.3d 1010, 1023-24 (9th Cir. 2010) (citations omitted). Pursuant to 28 U.S.C. § 2361, once a disinterested stakeholder deposits the disputed funds with the Court, the Court may dismiss it from the action and enjoin the claimants from initiating separate actions against the stakeholder for the same policy benefits. See Lincoln v. Nat'l Life Ins. Co. v. Ridgway, 293 F. Supp. 3d 1254, 1260 (W.D. Wash. 2018). "Discharge [of an interpleader] is normally granted absent bad faith by the stakeholder." Id. (citations omitted).

The parties do not dispute that the Policy proceeds constitute a single fund and that defendants are asserting adverse claims to that fund. See Dkts. #1 at 2, #20 at 2, #26 at 2-3. Wilmington, however, challenges United's dismissal from this action on the same grounds asserted in its counterclaims. See generally Dkt. #26. It argues that interpleader protection is inappropriate because United is a negligent stakeholder that is liable for creating the controversy

ORDER - 7

before the Court. As described above, Wilmington's allegations against United are baseless, and the Court has dismissed Wilmington's counterclaims pursuant to Rule 12(b)(6). Finding no additional claim for liability against United, the Court concludes that United is a disinterested stakeholder that has initiated this interpleader action in good faith. Because United has met the requirements for statutory interpleader, the Court will allow it to deposit the Policy proceeds into the Court's Registry. The Court further finds that United is entitled to dismissal and discharges it from future liability as to the Policy proceeds. See 28 U.S.C. § 2361.

### b. Request for Attorney's Fees

In addition to seeking interpleader protection, United seeks attorney's fees and costs in the amount of $6,883.50 for bringing this action.[3]

> [T]he availability of attorneys' fees for interpleader plaintiffs recognizes that by bringing the action, the plaintiff benefits all parties by promoting early litigation on the ownership of the fund, thus preventing dissipation. Because the interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund, attorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, *not* in litigating the merits of the adverse claimants' positions. Compensable expenses include, for example, preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action.

Trustees of Dirs. Guild of Am.-Prod. Pension Benefits Plans v. Tise, 234 F.3d 415, 426-27 (9th Cir. 2000) (internal quotation marks and citations omitted). The award of attorney's fees in an interpleader action is committed to the Court's discretion. See Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194 (9th Cir. 1962).

Because attorney's fees paid to the "disinterested" interpleader plaintiff "are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does

---

[3] The breakdown of United's fee request is as follows: $400 represents the filing fee, $125 represents the cost for service of process upon Wilmington, and $6,358.50 represents United's attorney's fees. See Dkts. #21, #21-4 (Ex. 4), #21-4 (Ex. 5).

ORDER - 8

not deplete the fund at the expense of the party who is ultimately deemed entitled to it." Tise, 234 F.3d at 427.  This Court has previously expressed its reluctance to award attorney's fees in interpleader actions, but recognizes that "the Ninth Circuit views interpleading as a boon to the claimants and has stated that 'the proper rule' is to award attorney's fees." Michelman v. Lincoln Nat'l Life Ins. Co., No. C10-0271-RSL, 2011 WL 1376266, at *1-2 (W.D. Wash. Apr. 11, 2011) (quoting Schirmer Stevedoring, 306 F.3d at 194).  With these principles in mind, the Court has scrutinized United's request, see Dkts. #20, #21-4 (Ex. 4), and will award fees.  The Court finds that the requested $6,883.50 award of fees and costs represents a minimal portion of the disputed funds that are reasonably related to the interpleader.[4]

### c. Conclusion

For the foregoing reasons, United's Motion for Leave to Deposit Funds, to Dismiss United with Prejudice, and to Discharge Liability (Dkt. #30) is GRANTED.  United is entitled to an award of $6,883.50 in attorney's fees and costs.  United shall disburse the Policy proceeds of $1,000,000, less its award of attorney's fees and costs of $6,883.50, into the Court's Registry, and shall thereafter be dismissed from the action with prejudice and discharged from future liability with regard to the Policy proceeds.

### IV. WILMINGTON'S MOTION TO EXTEND PRETRIAL SCHEDULE AND RELATED DATES (Dkt. #44)

On April 22, 2020, Wilmington moved to extend several pretrial deadlines in this matter. See Dkt. #44.  Wilmington seeks to extend the deadlines in the Court's existing Scheduling Order as follows:

1. Reports from expert witnesses under FRCP 26(a)(2) due     **May 28, 2020**

   All motions related to discovery must be noted on the
   motion calendar no later than the Friday before discovery closes

---

[4] The Court rejects Wilmington's explicit challenge to the $125 service of process fee sought by United.  Dkt. #26 at 6-7.  United has conclusively established that Wilmington delayed in filing its waiver of service form for more than two months, despite numerous representations to United that it would file the waiver imminently.  See Dkts. #29, #29-1.  In this context, it was not unreasonable for United to serve process upon Wilmington on October 21, 2019.  See id.; see also Tise, 234 F.3d at 426-27 (contemplating service of process expenses as compensable).

ORDER - 9

pursuant to LCR 7(d) or LCR 37(a)(2)

2. Discovery completed by                                                      **July 7, 2020**

3. Settlement conference held no later than                          **July 21, 2020**

4. All dispositive motions must be filed by and noted on the    **August 7, 2020**
motion calendar no later than the Friday before discovery
closes pursuant to LCR 7(d) or LCR 37(a)(2)

The Court, having confirmed that the remaining parties in this case do not oppose Wilmington's motion (see Dkt. #45),[5] finds good cause exists to grant the requested extensions. Wilmington's Motion to Extend Pretrial Schedule and Related Dates (Dkt. #44) is GRANTED. The Clerk of Court is directed to issue an amended Scheduling Order incorporating the above adjustments and extending the trial date and additional related dates accordingly.

### V.  CONCLUSION

For all the foregoing reasons,

(1)   IT IS HEREBY ORDERED that United's Motion to Dismiss Wilmington's Counterclaims (Dkt. #30) is GRANTED.  Each of Wilmington's counterclaims against United (see Dkt. #24) is DISMISSED with prejudice pursuant to Rule 12(b)(6).

(2)   IT IS FURTHER ORDERED that United's Motion for Leave to Deposit Funds, to Dismiss United with Prejudice, and to Discharge Liability (Dkt. #20) is GRANTED.  United shall deposit the $1,000,000 Policy proceeds, less United's attorney's fees and costs of $6,883.50, into the Court's Registry as interpleader funds pursuant to 28 U.S.C. § 1335.  The Clerk of Court shall retain such funds until directed to release them by further Order.  The Clerk is further directed to DISMISS United with prejudice from this matter.

(3)   IT IS FURTHER ORDERED that Wilmington's Motion to Extend Pretrial Schedule and Related Dates (Dkt. #44) is GRANTED.  The Clerk is directed to issue an amended Scheduling Order adjusting all pretrial deadlines in accordance with this Order.

//

---

[5] Defendant Richard Marks filed no opposition to Wilmington's motion.

ORDER - 10

1   DATED this 1st day of June, 2020.

3
                                    /s/ Robert S. Lasnik
4                                   Robert S. Lasnik
5                                   United States District Judge

ORDER - 11